UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GILREATH FAMILY & COSMETIC DENTISTRY, INC. d/b/a GILREATH DENTAL ASSOCIATES, on behalf of itself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE CINCINNATI INSURANCE COMPANY,<br><br>Defendant. | CIVIL ACTION NO.<br>1:20-cv-02248-JPB |

## ORDER

Before the Court is Defendant The Cincinnati Insurance Company's ("Cincinnati") Motion to Dismiss Plaintiff's Amended Complaint ("Motion"). ECF No. 14. Having reviewed and fully considered the papers filed therewith, the Court finds as follows:

### I.   BACKGROUND

Plaintiff Gilreath Family & Cosmetic Dentistry, Inc. d/b/a Gilreath Dental Associates ("Gilreath") filed a complaint against Cincinnati in connection with Cincinnati's denial of insurance coverage for losses Gilreath sustained as a result of the COVID-19 pandemic.

As alleged in the Amended Complaint, Gilreath is a dental practice in Marietta, Georgia (Cobb County) insured under a Cincinnati policy that was in effect from October 2017 through October 2020 (the "Policy").[1]  As relevant here, the Policy provided Business Income, Civil Authority and Extra Expense coverage. The Policy defined those coverages as follows:

**Business Income**

> We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration[."]  The "suspension" must be caused by ***direct "loss" to property*** at a "premises" caused by or ***resulting from any Covered Cause of Loss***.

ECF No. 11-1 at 40 (emphasis added).

**Extra Expense**

> We will pay Extra Expense you sustain during the "period of restoration[."]  Extra Expense means necessary expenses you sustain (as described in Paragraphs (2)(b), (c) and (d)) during the "period of restoration" that you would not have sustained if there had been no ***direct "loss" to property*** caused by or ***resulting from a Covered Cause of Loss***.

*Id*. at 41 (emphasis added).

---

[1] The Court may consider the Policy and other exhibits attached to the Amended Complaint in ruling on Cincinnati's Motion.  *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007) ("Under the Federal Rules of Civil Procedure, . . . exhibits are part of the pleading 'for all purposes.'").

**Civil Authority**

> When ***a Covered Cause of Loss causes damage*** to property other than Covered Property at a "premises[,"] we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises[,"] provided that both of [the specified conditions] apply.

*Id*. (emphasis added).

As highlighted above, each coverage is contingent on a "Covered Cause[] of Loss." The policy defines "Covered Cause[] of Loss" as a "direct 'loss.'" *Id*. at 27. "'Loss' means accidental physical loss or accidental physical damage." *Id*. at 60. Therefore, Covered Cause of Loss means direct accidental physical loss or damage. The Policy does not specifically exclude losses caused by the spread of viruses or communicable diseases.

As alleged in the Amended Complaint, the World Health Organization declared the COVID-19 virus a global pandemic in March 2020, and the Governor of Georgia thereafter issued a shelter-in-place order that required certain businesses to cease in-person operations temporarily. As Gilreath acknowledges, dental practices were not required to close. The Centers for Medicare and Medicaid Services and other pertinent health organizations recommended that dental practices delay all elective surgeries and non-essential procedures.

Gilreath asserts that as a result of the various orders and recommendations, it was forced to "suspend or reduce" its operations.  It explains that emergency dental procedures constitute an insignificant part of its business and that a substantial portion of its business is derived from routine and elective procedures.

Gilreath therefore submitted a request to Cincinnati for Business Income, Extra Expense and Civil Authority coverage.  Cincinnati denied Gilreath's request on May 20, 2020, on several grounds, including that the Policy required direct physical loss or damage for coverage to apply.  At the time of the denial, Cobb County had reported 2,584 COVID-19 cases and 134 deaths linked to the virus.

Gilreath alleges that "[t]he presence of virus or disease can constitute physical damage to property" and claims the virus physically impacted its property because its business is "highly susceptible to rapid person-to-property transmission of the virus."  As such, the virus "render[ed] [its property] unsafe, uninhabitable, or otherwise unfit for its intended use, which constitute[d] direct physical loss."  Gilreath concludes that even if the virus did not impact its business, the various orders and recommendations made it "impossible" for its business to operate.

Gilreath's Amended Complaint asserts claims for breach of contract (Counts I-III), declaratory judgment (Count IV) and expenses of litigation (Count V).  The claims all relate to Cincinnati's May 20, 2020 denial of coverage.

Cincinnati seeks to dismiss the Amended Complaint on the grounds that Gilreath did not sustain "direct physical loss" of its premises, which is an express requirement for coverage. Cincinnati argues that when the conclusory allegations in the Amended Complaint are set aside, the remaining factual allegations fail to show damage to the physical structure of the building. Cincinnati also explains that direct physical loss contemplates an actual change to the property causing it to become unsatisfactory or requiring repairs for future use. It emphasizes that no Georgia case has found that the effects of a virus constitute direct physical loss to a property. Rather, Gilreath contends it is well-settled that "'losses that are intangible or incorporeal'" are not considered direct physical loss, and claims of merely "'detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property'" are precluded under the definition.

Further, Cincinnati argues that Civil Authority coverage is not applicable because in addition to Gilreath failing to show any direct physical loss to its property, it cannot show that the various orders and recommendations prohibited it from accessing its premises. Cincinnati points out that Gilreath was permitted to perform emergency dental procedures.

Gilreath counters that because the Policy does not define what constitutes a direct physical loss, and the phrase is ambiguous, it must be construed in its favor.

It further contends that physical loss does not require a visible or physical alteration to the property and that the mere presence of COVID-19 constitutes physical damage to the property sufficient to require coverage under the Policy.

Additionally, Gilreath argues that Civil Authority coverage is required here because the COVID-19 pandemic and the accompanying orders and recommendations prevented it and numerous businesses in the area from operating and accessing their premises.

**II.     DISCUSSION**

    **A.     Legal Standard**

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Traylor v. P'ship Title Co., LLC*, 491 F. App'x 988, 989 (11th Cir. 2012). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief[, however,] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation omitted). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (A complaint does not suffice "if it tenders naked assertions devoid of further factual

enhancement.") (internal punctuation omitted) (quoting *Twombly*, 550 U.S. at 557).

Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. "This standard does not require a party to plead facts with such particularity to establish a significant probability that the facts are true, rather, it requires a party's pleading of facts to give rise to a 'reasonable expectation that discovery will reveal evidence [supporting the claim].'" *Burch v. Remington Arms Co., LLC*, No. 2:13-cv-00185, 2014 WL 12543887, at *2 (N.D. Ga. May 6, 2014) (quoting *Twombly*, 550 U.S. at 555) (alteration in original). *See also Twombly*, 550 U.S. at 570 (dismissing complaint because the plaintiffs did not state facts sufficient to "nudge[] their claims across the line from conceivable to plausible").

At bottom, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" (*Iqbal*, 556 U.S. at 678) and must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Traylor*, 491 F. App'x at 990 (quoting *Iqbal*, 556 U.S. at 678).

### B.      Analysis

Georgia law[2] is clear that "construction [of a contract] is a matter of law for the court." *Envision Printing, LLC v. Evans*, 786 S.E.2d 250, 252 (Ga. Ct. App. 2016). *See also Gans v. Ga. Fed. Sav. & Loan Ass'n*, 347 S.E.2d 615, 618 (Ga. Ct. App. 1986) ("It is ordinarily the duty of the court to interpret a contract as a matter of law"). Insurance contracts are treated like any other contract and "are interpreted by [the] ordinary rules of contract construction." *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 498 S.E.2d 492, 494 (Ga. 1998). Construction of a contract requires three steps:

> First, the trial court must decide whether the language is clear and unambiguous. If it is, no construction is required, and the court simply enforces the contract according to its clear terms. Next, if the contract is ambiguous in some respect, the court must apply the rules

---

[2] The parties' briefs are silent on the choice of law question, and there is no guidance in the Policy. Although the parties cite case law from several jurisdictions, Cincinnati's opening brief cites Georgia law for the proposition that Gilreath has the burden to show that the loss was covered by the Policy, and Gilreath relies on Georgia's rules of contract construction to analyze the Policy. Neither party challenges the other's citation to Georgia law. On the record before the Court, it appears that Georgia law would apply here, given that there is no claim or indication that the Policy was delivered outside Georgia. *See Johnson v. Occidental Fire & Cas. Co. of N.C.*, 954 F.2d 1581, 1583-84 (11th Cir. 1992) (finding that under Georgia choice of law rules, the place of delivery of the insurance policy controls); *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998) (stating that "Georgia courts have held that when insurance contracts made [(*i.e.*, delivered)] in Georgia lack a choice-of-law provision, the parties are presumed to have intended their contract to be governed by Georgia law").

> of contract construction to resolve the ambiguity.  Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

*Envision Printing*, 786 S.E.2d at 252 (quoting *General Steel v. Delta Bldg. Sys.*, 676 S.E.2d 451, 453 (Ga. Ct. App. 2009)).

With respect to the first step, "[t]he court [initially] looks to the four corners of the agreement to ascertain the meaning of the contract from the language employed."  *Brogdon v. Pro Futures Bridge Cap. Fund, L.P.*, 580 S.E.2d 303, 306 (Ga. Ct. App. 2003).  In that analysis, "[w]ords generally [are ascribed] their usual and common signification."[3]  O.C.G.A. § 13-2-2(2).  "[W]here the language of [the] contract is clear, unambiguous, and capable of only one reasonable interpretation, no construction is necessary or even permissible by the trial court." *Ainsworth v. Perreault*, 563 S.E.2d 135, 140–41 (Ga. Ct. App. 2002).  *See also Triple Eagle Assocs., Inc. v. PBK, Inc.*, 704 S.E.2d 189, 195–96 (Ga. Ct. App. 2010) (stating that "where the terms of a written contract are plain and unambiguous, a court must confine itself to the four corners of the document to

---

[3] *See also King v. GenOn Energy Holdings, Inc.*, 747 S.E.2d 15, 17 (Ga. Ct. App. 2013) (stating that "the usual and common meaning of a word may be supplied by common dictionaries").

ascertain the parties' intent, and is not permitted to strain the construction of a contract, so as to discover an ambiguity") (internal punctuation omitted).

Conversely, an "[a]mbiguity exists where the words used in the contract leave the intent of the parties in question—i.e., that intent is uncertain, unclear, or is open to various interpretations." *Gen. Steel*, 676 S.E.2d at 453. *See also ESI Cos., Inc. v. Fulton Cnty.*, 609 S.E.2d 126, 129 (Ga. Ct. App. 2004) ("Ambiguity in a contract may be defined as duplicity, indistinctness, and uncertainty of meaning or expression."). But a party's erroneous interpretation of the contract does not create ambiguity within it. *See generally Mullis v. Bibb Cnty.*, 669 S.E.2d 716, 718 (Ga. Ct. App. 2008).

Even if the court finds the contract is ambiguous, a jury question does not automatically arise. *See Envision Printing*, 786 S.E.2d at 252. Instead, the court must first apply the rules of construction to resolve the ambiguity. *Id.* To that end, "[t]he cardinal rule of construction is to ascertain the intention of the parties." O.C.G.A. § 13-2-3. *See also Nebo Ventures, LLC v. NovaPro Risk Sols., L.P.*, 752 S.E.2d 18, 26 (Ga. Ct. App. 2013) ("Enforcement of the parties' intent is superior to the other rules of construction.").

Courts also analyze the contract as whole (not merely isolated clauses and provisions) and interpret it both to give the greatest effect possible to all provisions

and to avoid rendering any of the provisions meaningless. *See, e.g.*, *Young v. Stump*, 669 S.E.2d 148, 150 (Ga. Ct. App. 2008). The underlying principle is that the contract must be read "reasonably" and "in a way that does not lead to an absurd result." *Office Depot, Inc. v. Dist. at Howell Mill, LLC*, 710 S.E.2d 685, 689 (Ga. Ct. App. 2011).

As applicable in this case, an insurance policy is "read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney." *Georgia Farm Bureau Mut. Ins. Co. v. Smith*, 784 S.E.2d 422, 424 (Ga. 2016). Any "[a]mbiguities in the contract are strictly construed against the insurer as drafter of the document." *Boardman*, 498 S.E.2d at 494. "But an equally valid rule is that an unambiguous policy requires no construction, and its plain terms must be given full effect even though they are beneficial to the insurer and detrimental to the insured." *Woodmen of World Life Ins. Soc. v. Etheridge*, 154 S.E.2d 369, 372 (Ga. 1967). Accordingly, the court "ha[s] 'no . . . right by strained construction to make [a] policy more beneficial by extending . . . coverage'" where none exists. *Id.* at 426.

The Court undertakes the analysis of the Policy with these principles in mind.

11

Here, the resolution of Cincinnati's Motion with respect to each of the denied coverages turns on whether Gilreath experienced a Covered Cause of Loss. As set forth above, a Covered Cause of Loss means direct physical loss or damage. The parties dispute whether this requires an impact or change to the building or whether it is sufficient to show that the virus is airborne and could be present within the premises.

In *AFLAC Inc. v. Chubb & Sons, Inc.*, the Georgia Court of Appeals addressed the meaning of direct physical loss and explained that "the common meaning of the [phrase] . . . contemplates an ***actual change . . . directly upon the property*** causing it to become unsatisfactory for future use or requiring that repairs be made to make it so." 581 S.E.2d 317, 319 (Ga. Ct. App. 2003) (emphasis added). District courts in Georgia have adopted this definition. For example, one court concluded that there must be "some kind of physical effect on the covered property" as opposed to mere loss of use. *Ne. Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*, No. 2:12-cv-00245-WCO, 2014 WL 12480022, at *5 (N.D. Ga. May 23, 2014) (taking into consideration that the property "did not break down or become damaged" in its rejection of the plaintiff's attempt "to transform [an] ethereal loss [of income] into a direct physical loss").

Although *Mama Jo's Inc. v. Sparta Insurance Company* involved Florida law, the Eleventh Circuit Court of Appeal's definition of "direct physical loss" in that case did not turn on the interpretation of Florida law, so it is helpful here. 823 F. App'x 868, 879 (11th Cir. 2020). There, the court looked to the plain meaning of the phrase to find that the words "direct" and "physical" modify "loss" and "'impose the requirement that the damage be actual.'" *Id*. (affirming grant of summary judgment to the insurer because the insured could not demonstrate actual physical loss).

On facts almost identical to those at bar, the court in *Johnson v. The Hartford Financial Services Group, Inc.* dismissed an action brought by a group of dentists because the plaintiffs failed to allege "that the COVID-19 virus caused any physical damage to the[ir] properties" or that it caused "any tangible alteration to a single physical edifice or piece of equipment." No. 1:20-cv-02000-SDG, 2021 WL 37573, at *5 (N.D. Ga. Jan. 4, 2021). The court was not persuaded by the plaintiffs' argument that the damage was caused by "the omnipresent specter of COVID-19." *Id*. It concluded that such "conjecture and speculation" could not defeat a motion to dismiss. *Id*.

Numerous other district courts in Georgia and around the country have applied a similar analysis and dismissed claims challenging the denial of property

insurance coverage related to the COVID-19 pandemic.  *See, e.g.*, *Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*, No. 1:20-cv-2939-TWT, 2020 WL 5938755, at *5 (N.D. Ga. Oct. 6, 2020) (rejecting the argument that a shelter-in-place order caused a restaurant's physical loss of its property because no "physical element of the dining rooms—the floors, the ceilings, the plumbing, the HVAC, the tables, the chairs—underwent [a] physical change as a result of the [o]rder"); *Karmel Davis and Associates, Attorneys-at-Law, LLC v. The Hartford Financial Services Group, Inc.*, No. 1:20-cv-02181-WMR, 2021 WL 420372, at *4 (N.D. Ga. Jan. 26, 2021) (dismissing the case because "the 'likely' presence of COVID-19 cannot be regarded as a physical change, as it does not and has not physically altered the insured property" and explaining that "[a]lthough the virus is transmitted through the air and may adhere to surfaces briefly, there is no indication that it causes any sort of physical change to the property it touches"); *El Novillo Rest. v. Certain Underwriters at Lloyd's, London*, No. 1:20-cv-21525-UU, 2020 WL 7251362, at *6 (S.D. Fla. Dec. 7, 2020) (collecting cases).

In this case, although the phrase "direct physical loss" is not defined in the Policy, the Court finds that its plain and literal meaning (based on certain related definitions in the Policy and applicable case law) requires actual, physical damage to the covered premises.  This meaning is clear and unambiguous, and the Court

therefore ends its inquiry at this step.  *See Woodmen*, 154 S.E.2d at 372 (reminding courts that "an unambiguous policy requires no construction, and its plain terms must be given full effect even though they are beneficial to the insurer and detrimental to the insured").[4]

      Gilreath's reliance on the opinions in *Studio 417, Inc. v. Cincinnati Insurance Company*, 478 F. Supp. 3d 794, 796 (W.D. Mo. 2020) and *Blue Springs Dental Care, LLC v. Owners Insurance Company*, No. 20-cv-00383-SRB, 2020 WL 5637963, at *1 (W.D. Mo. Sept. 21, 2020) as support for a contrary position is misplaced.  First, the Court does not find those cases persuasive because they are contrary to Georgia law, which applies here.  Moreover, the Court disagrees with their reasoning that the potential attachment of a virus with a limited life cycle to the walls of a building equals physical damage or loss.

      The Court now applies the definition of "direct physical loss" to the facts of this case.  After the "labels and conclusions" in the Amended Complaint are set aside for the purpose of ruling on Cincinnati's Motion (*Twombly*, 550 U.S. at 555),

---

[4] But even if the Policy were ambiguous, interpreting it as Gilreath proposes—to mandate that a ***property*** insurance policy cover intangible losses not directly related to the property—would contravene the applicable Georgia rules of contract construction.  For example, Gilreath's interpretation would stretch the terms of the Policy beyond what was intended, render meaningless the word "physical" and lead to an absurd result.

the key remaining factual allegations (accepted as true and viewed in the light most favorable to Gilreath) reflect that: the COVID-19 virus is airborne, easily transmissible and may be found within Gilreath's premises; Gilreath was forced to suspend non-emergency procedures due to the various orders and recommendations entered as a result of the pandemic; businesses in Gilreath's area were also subject to and impacted by those orders.  Notably, there is no allegation that Gilreath had a confirmed case of the virus in its offices.  These facts fall far short of alleging actual, physical damage to Gilreath's premises.  Contrary to Gilreath's contention, it does not follow that its premises have been or will be physically damaged by the mere existence and proliferation of the COVID-19 virus in the community.  In short, Gilreath has failed to "nudge[] [its] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Accordingly, the Court finds that the Complaint fails to show the direct physical loss or damage necessary for coverage under the Policy.  This deficiency means that Gilreath has failed to state a claim upon which relief can be granted.[5]  Cincinnati's Motion (ECF No. 14) is **GRANTED**, and this action is **DISMISSED**.  The Clerk is **DIRECTED** to close the case.

---

[5] In light of this finding the Court need not reach the parties' remaining arguments. The Court also need not address any dependent claims for relief (*e.g.* Count V for expenses of litigation).

**SO ORDERED** this 1st day of March, 2021.

J. P. BOULEE
United States District Judge